IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON MESSER,
        Plaintiff,

CV 06-826-PK

OPINION AND
v.        ORDER

HO SPORTS COMPANY, INC.,
MOTION WATER SPORTS, INC.,
and CONNELLY SKIS, INC.,
        Defendants.

PAPAK, Magistrate Judge:

      Plaintiff Jason Messer patented a device that permitted wakeboards to be used without bindings, so that friction alone would be sufficient to allow a user to control and remain upright on the board. Messer's patent issued in June 1998 as U.S. Patent No. 5,766,051 (the "'051 Patent"). In this action, Messer alleges that wakeskates marketed by defendants HO Sports Company, Inc., Motion Water Sports, Inc., and Connelly Skis, Inc., infringe one or more claims of the '051 Patent.

Page 1 - OPINION AND ORDER

Now before the court is defendants' motion for partial summary judgment (#45). Defendants argue that nine of the twenty-two claims of the '051 Patent are invalid as anticipated by prior art. This court has considered defendants' motion, all of the pleadings on file, and oral argument on behalf of the parties. For the reasons set forth below, defendants' motion is granted in part and denied in part: specifically, defendants' motion is granted as to '051 Patent Claims 1, 10, 11, 14, and 15, and denied as to Claims 2, 3, 4, and 21.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See*, *e.g.*, *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

"[T]he statutory purposes of the grant of summary judgment under Fed. R. Civ. P. 56 are without question intended to be effectuated in patent litigation as in any other type of suit and in accordance with the same standard." *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1571 (Fed. Cir. 1984) (footnote, citation omitted).

**FACTUAL BACKGROUND**

In June 1994, AstroDeck, Inc., published in *Surfing* magazine an advertisement for surfboard traction pads incorporating many of the features later claimed in the '051 Patent. AstroDeck had been marketing such pads since as early as 1983, and Messer was aware of the AstroDeck pads in as early as 1992. The June 1994 AstroDeck advertisement was disclosed to the United States Patent and Trademark Office in connection with a patent that issued in July 1995 as U.S. Patent No. 5,435,765 (the "Fletcher Patent")[1], but was not directly disclosed in connection with the '051 Patent.

Messer filed for patent protection of his wakeboard traction pad on December 31, 1996, citing as a reference, among other things, the Fletcher Patent. The '051 patent issued June 16, 1998.[2] Defendants now challenge Claims 1, 2, 3, 4, 10, 11, 14, 15, and 21 of the '051 patent.

Claim 1 of the '051 patent describes:

A wakeboard traction pad for providing sure-footed engagement of a wakeboard by a rider thereof, comprising:
    a top surface for engagement by the rider's feet;
    a high front end having a first height and a first width;
    a low back end coupled to said high front end, said low back end having a
        second height and a second width;
    said first height being taller than said second height; and
    said top surface sloping or tapering to mediate said first and second
        height; whereby:

---

[1] The traction pads depicted in the AstroDeck advertisement appear to constitute an embodiment of the Fletcher Patent's subject invention.

[2] The patent examiner who issued the '051 Patent indicated on a PTO-1449 Form (Information Disclosure Citation) that he considered the Fletcher Patent, but neither on the PTO-1449 nor on a PTO-892 Form (Notice of References Cited) did the examiner indicate that the AstroDeck advertisement was considered in connection with the '051 Patent. The version of the Manual of Patent Examining Procedure current at the time the '051 Patent issued (6th ed., rev. 2, July 1996) provides that all materials considered should be cited on one of these two forms.

> the wakeboard traction pad provides a sloping surface from said
> high front end to said low back end to provide an angled
> traction surface and to provide the rider traction upon the
> wakeboard while riding the wakeboard.

'051 Patent, 9:18-32. Claim 1 is among those the validity of which defendants now challenge.

Claim 2-18 and 20 are all dependent on Claim 1. Claim 2 describes the traction pad of Claim 1, wherein the "top surface" comprises "a roughened surface, said roughened surface providing additional traction to the rider upon the wakeboard." '051 Patent, 9:18-32. In its Opinion and Order of July 9, 2007 (#35) (this court's "*Markman* Order"), this court construed the term "roughened surface" to mean "a non-slip finish or surface." Claim 2 is likewise among those the validity of which defendants now challenge.

Claim 3 describes the traction pad of Claim 2, wherein the "top surface" of the pad incorporates a means of channeling water away from the rider's foot. '051 Patent, 9:33-37. Claim 4 describes the traction pad of Claim 3 with the added specificity that the water-channeling is performed by means of widthwise grooves. *See* '051 Patent, 9:38-44. Defendants challenge the validity of Claims 3 and 4.

Claim 5 describes the traction pad of Claim 1, with the additional limitation that the "high front end" is "approximately one and one half inches (1 ½") tall." '051 Patent, 9:52-54. Claim 6 describes the traction pad of Claim 5, with the limitation that the "high front end" is, in addition, "approximately nine and one-half inches (9 ½") wide." '051 Patent, 9:56-58. Defendants do not currently challenge the validity of Claims 5 or 6.

Claim 7 describes the traction pad of Claim 1, with the further limitation that the "low back end" is "approximately one fourth inch (¼") tall." '051 Patent, 9:60-62. Claim 8 describes the traction pad of Claim 7, with the limitation that the "low back end" is also "approximately

eleven and one fourth inches (11 ¼") wide." '051 Patent, 9:64-66.  Claim 9 describes the traction pad of Claim 8, with the further limitation that the pad tapers, being narrower at its front end than at its back end.  Defendants do not currently challenge the validity of Claims 7, 8, or 9.

Claim 10 describes the traction pad of Claim 1, with the additional feature of a "kicktail." '051 Patent, 10:10-12.  Claims 11-13 ascribe various limitations to the kicktail of Claim 10: Claim 11 specifies that the kicktail be present along the entire first width of the traction pad's high front end, '051 Patent, 10:14-19; Claim 12 specifies that the slope of the kicktail be "dramatically increased" adjacent to the high front end, '051 Patent, 10:2–26; Claim 13 specifies that the kicktail "occupy[] approximately one-fourth to one-fifth" of the top surface of the pad, and that the back end has a significantly decreased slope as compared to the front end, the area of lesser slope "occupying approximately three-fourths to four-fifths" of the top surface, '051 Patent, 10:28-32.  Defendants challenge the validity of Claims 10 and 11, but not of Claims 12 or 13.

Claim 14 describes the traction pad of Claim 1 with the additional feature of "an arch support." '051 Patent, 10:34-36.  Claim 15 describes the traction pad of Claim 14, with the additional limitation that the arch support includes a ridge designed to engage the arch of the rider's foot.  Defendants challenge the validity of Claims 14 and 15.

Claim 16 describes the traction pad of Claim 1, with additional limitations such that the top surface complements the contours of the rider's foot.  Claim 17 also describes the traction pad of Claim 1, with the limitation that the pad's low back end tapers to a point.  Claim 18 likewise describes the traction pad of Claim 1, with the limitations that the material of which it is constructed be lightweight, water-resistant, and slightly compressible.  Defendants do not

currently challenge the validity of Claims 16, 17, or 18.

Claim 20, the last claim dependent on Claim 1, describes a wakeboard incorporating the traction pad of Claim 1. Defendants do not currently challenge the validity of Claim 20.

Claim 19, the second independent claim of the '051 Patent, like independent Claim 1, describes: "[a] wakeboard traction pad for providing sure-footed engagement of a wakeboard by a rider thereof." '051 Patent, 11:7-8. However, unlike independent Claim 1, Claim 19 incorporates limitations closely equivalent or identical to those described in each of dependent Claims 2-18. Defendants do not currently challenge the validity of Claim 19.

Claim 21, the third independent claim of the '051 Patent, describes:

> A wakeboard traction surface for a wakeboard, comprising:
>     a sloping surface, said sloping surface defined between a high front end
>         and a low back end to provide an angled traction surface and to
>         provide the rider traction upon the wakeboard while riding the
>         wakeboard, said high front end terminating in a kicktail; and ;
>     an arch support, said arch support defined upon said sloping surface;
>         whereby:
>     greater control and traction are delivered to a rider of the wakeboard
>         incorporating the wakeboard traction surface.

'051 Patent, 12:34-45. In its *Markman* Order, this court held that the term "wakeboard traction surface" should be construed to mean "a friction-enhancing finish or surface material that may adhere or be attached to the top surface of a wakeboard." Defendants now challenge the validity of Claim 21.

Claim 22 is dependent on Claim 21, describing "[a] wakeboard incorporating the [wakeboard] traction [surface] of claim 21." '051 Patent, 12:46-47. Defendants do not currently challenge the validity of Claim 22.

Messer testified in deposition as to his opinion that the various AstroDeck traction pads

depicted in the AstroDeck advertisement of June 1994 collectively incorporate each element described in Claim 1 of the '051 patent, and arch support as described in Claims 14 and 15. Messer specifically conceded that the AstroDeck pads, if marketed today for use on wakeboards, would infringe '051 Patent Claims 1 (traction pad), 14 (pad with arch support), 15 (pad with arch support incorporating a ridge), and 21 (traction surface). He further testified that the AstroDeck pads incorporate a kicktail. *Cf* '051 Patent, Claims 10 and 11. It is plainly evident in the June 1994 advertisement's depiction of AstroDeck's pads that the kicktail adjacent to the high front end of the pad is present along the whole width of the high front end. Also plainly evident in the June 1994 advertisement's depiction of AstroDeck's pads are both widthwise and lengthwise grooves covering the top surface of the pads.

Defendants offer the testimony of Herbert E. Fletcher – the holder of the Fletcher Patent and the owner and founder of AstroDeck – that his purpose in founding AstroDeck was to "manufacture a product that is nonslip for board sports to be able to better control your surfboard." Defendants offer no additional evidence as to whether the pads depicted in the AstroDeck advertisement of June 1994 incorporate a roughened top surface. The reproduction of the June 1994 advertisement made available to the court does is not of sufficient quality to permit the court to determine whether the pads' top surface is non-slip or roughened.

## ANALYSIS

Preliminarily, it should be noted that, in applying the substantive law of patents, this court is bound by the decisions of the Federal Circuit to the same extent that it is bound by the decisions of the Ninth Circuit when applying "general" laws. *See Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1573 (Fed. Cir. 1984). Because the Federal Circuit expressly

adopted as binding the decisions of its predecessor courts, this court is therefore also bound by the decisions of the Court of Claims and the Court of Customs and Patent Appeals. *See South Corp. v. United States*, 690 F.2d 1368, 1370-71 (Fed. Cir. 1982) (*en banc*).

35 U.S.C. § 282 provides that:

> A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.

35 U.S.C. § 282; *see also High Concrete Structures, Inc. v. New Enter. Stone & Lime Co.*, 377 F.3d 1379, 1382 (Fed. Cir. 2004) ("A patent is presumed valid, . . . and can be proved invalid only by clear and convincing evidence") (citation omitted).

35 U.S.C. § 102 further provides that:

> A person shall be entitled to a patent unless—
>
> ***
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States. . . .

35 U.S.C. § 102. The Federal Circuit has clarified the circumstances under which a prior publication qualifies as prior art for Section 102 purposes:

> Anticipation based on a printed publication . . . requires the presence in the publication of each and every limitation of the claimed invention. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citation omitted). However, "a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing feature is necessarily present, or inherent, in the single anticipating reference." *SmithKline Beecham [v. Apotex Corp.]*, 403 F.3d [1331,] 1343 [(Fed. Cir. 2005)] (quoting *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003)). "What a prior art reference discloses in an anticipation analysis is a factual determination that we review under the clearly erroneous standard." *Tegal Corp. [v. Tokyo Electron Am., Inc.]*, 257 F.3d [1331], 1345-46 [(Fed. Cir. 2001)] (citing *In re*

*Graves*, 69 F.3d 1147, 1151 (Fed. Cir. 1995)).

In order to anticipate, a prior art disclosure must also be enabling, such that one of ordinary skill in the art could practice the invention without undue experimentation. *SmithKline Beecham*, 403 F.3d at 1342. The standard for enablement of a prior art reference for purposes of anticipation under section 102 differs from the enablement standard under 35 U.S.C. § 112. *Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1325 (Fed. Cir. 2005) (citation omitted). While section 112 "provides that the specification must enable one skilled in the art to 'use' the invention," *id.* (quoting *In re Hafner*, 56 C.C.P.A. 1424, 410 F.2d 1403, 1405 (CCPA 1969)), "section 102 makes no such requirement as to an anticipatory disclosure," *id.* Significantly, we have stated that "anticipation does not require actual performance of suggestions in a disclosure. Rather, anticipation only requires that those suggestions be enabled to one of skill in the art." *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1379 (Fed. Cir. 2001) (*citing In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985) ("It is not, however, necessary that an invention disclosed in a publication shall have actually been made in order to satisfy the enablement requirement.")). "Whether a prior art reference is enabling is a question of law based upon underlying factual findings." *SmithKline Beecham*, 403 F.3d at 1342-43 (citation omitted).

*Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347, 1354-1355 (Fed. Cir. 2005).

The Federal Circuit has further held that "it is axiomatic that that which would literally infringe if later anticipates if earlier." *Bristol-Myers Squibb Co. v. Ben Venue Labs.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001).

Messer argues that because the Fletcher Patent was considered by the patent examiner in connection with the '051 Patent, and because the AstroDeck pads depicted in the June 1994 advertisement were the subject invention of the Fletcher Patent, this court should find that the patent examiner considered the AstroDeck pads before issuing the '051 Patent. Messer further argues that, where a patent examiner considers an alleged prior art reference and nevertheless issues a patent, a standard higher than "clear and convincing" evidence of anticipation is required before the patent can be found invalid as anticipated by the prior art.

Messer's argument mischaracterizes the law. In fact, Federal Circuit jurisprudence establishes that the burden of proof as to invalidity remains one of clear and convincing evidence even in the event that alleged prior art was considered by the patent examiner; however, the patent examiner's decision that the invention was novel despite the prior art would, under such circumstances, be entitled to deference. *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-1360 (Fed. Cir. 1984).

In addition, as noted above, the evidence in the record does not support the conclusion that the alleged prior art at issue here was considered by the patent examiner. Rather, the evidence suggests that the examiner did not consider the AstroDeck advertisement, but rather the Fletcher Patent. Although the AstroDeck pads appear to be an embodiment of the Fletcher Patent's subject invention, the limitations described in the Fletcher Patent's claims are markedly different from those described in the claims of the '051 Patent. I take judicial notice that the Fletcher Patent claims, in their entirety, are as follows:

> 1. A non-slip padding for use with a surfboard comprising:
>    > a padding system having at least one pad member with a top surface, a bottom surface, a first end and a second end; and
>    > at least one raised element extending from the top surface of the pad member, wherein the raised element comprises a first raised member extending from the top surface of the pad member and defining an upper surface and upper surface edges; and a second raised member extending from the upper surface of the first raised member and disposed within the upper surface edges of the first raised member.
>
> 2. A non-slip padding as claimed in claim 1 wherein the first raised member and the second raised member further comprise side surfaces substantially perpendicular to the upper surface of the first and second raised members.
>
> 3. A non-slip padding as claimed in claim 1, wherein each pad member has

>    a substrate and wherein the portion of the substrate at the second end of at least one pad member is thicker than the rest of the substrate.
>
> 4. A non-slip padding as claimed in claim 1 wherein the first raised member is larger in diameter than the second raised member.
>
> 5. A non-slip padding as claimed in claim 1 wherein the pad members are made from flexible material.
>
> 6. A non-slip padding as claimed in claim 5 wherein the flexible material is foam rubber.
>
> 7. A non-slip padding as claimed in claim 5 wherein the flexible material is polyurethane.
>
> 8. A non-slip padding as claimed in claim 1, further comprising an adhesive disposed on the bottom surface of the pad member.

Fletcher Patent, 5:20 - 6:27. Thus, what is primarily claimed in the Fletcher Patent is a pad with what may be described as a "waffle-on-waffle" top surface, a feature not claimed in the '051 Patent. No special deference is therefore owed to the patent examiner's determination of novelty, and defendants' burden remains one of clear and convincing evidence.

Messer further argues that, even if the limitations of the challenged claims are disclosed in the AstroDeck advertisement, summary judgment is nevertheless inappropriate because there is necessarily a question of fact as to whether the AstroDeck advertisement is "enabling, such that one of ordinary skill in the art could practice the invention without undue experimentation," *Novo Nordisk*, 424 F.3d at 1355, *citing SmithKline Beecham v. Apotex Corp.*, 403 F.3d 1331, 1342 (Fed. Cir. 2005). However, "[w]hether a prior art reference is enabling is a question of law based upon underlying factual findings." *Id.*, *quoting SmithKline Beecham*, 403 F.3d at 1342-43. Here, the evidence in the record establishes that Messer's wakeboard traction pad is an essentially simple device, without moving parts, the identity, location, and functionality of

whose features and elements may be readily ascertained even from a crude depiction. To the extent that the limitations of the challenged claims may be identified in the AstroDeck advertisement, the advertisement is necessarily enabling of the invention described in those claims.

Defendants argue that Claims 1, 2, 3, 4, 10, 11, 14, 15, and 21 are invalid as anticipated by the AstroDeck advertisement. As noted above, Claim 1 describes a "wakeboard traction pad" incorporating the following elements: a "top surface" suitable for standing upon and constituting a "sloping surface" between a "high front end" and a "low back end" lower than the high front end." Each of these elements is plainly evident in the June 1994 advertisement's depiction of AstroDeck's pads; moreover, Messer conceded under oath that each element was readily identifiable in the depictions. Because every limitation of Claim 1 is disclosed in the AstroDeck advertisement, and because the AstroDeck advertisement would be enabling of the invention described in Claim 1 of the '051 Patent to one of ordinary skill in the art, Claim 1 is invalid as anticipated by prior art.

Claim 2 describes the pad of Claim 1, with the additional limitation that the top surface be a "roughened surface," which, in the course of claim construction proceedings, the parties stipulated should be construed to mean "a non-slip finish or surface." In its *Markman* Order, this court accepted without analysis the parties' stipulated construction. Now presented for the first time with a dispositive motion whose outcome is dependent in part on the construction of Claim 2, the court further construes the term "roughened surface" to mean "a coarse or uneven non-slip finish or surface, as from projections, irregularities, or breaks." *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995) (*en banc*) (affirming that claim construction

can take place "in the context of dispositive motions such as those seeking judgment as a matter of law"); *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352 (Fed. Cir. 2001) (affirming that district courts are not required "to follow any particular procedure in conducting claim construction" and that "[a]s long as the trial court construes the claims to the extent necessary . . . , the court may approach the task in any way that it deems best").

Defendants offer the testimony of Fletcher that AstroDeck's *purpose* was to manufacture "nonslip" products for board sports. However, Fletcher did not testify either that the pads depicted in the June 1994 advertisement were themselves non-slip or that their friction-enhancing qualities, if any, were a consequence of a roughened top surface.[3] Fletcher's testimony therefore fails to illuminate the question this court is called upon to determine: whether the "roughened surface" feature described in Claim 2 (as construed by this court) is disclosed in the AstroDeck advertisement.

As noted above, the reproduction of the AstroDeck advertisement made available to the court does not permit any conclusion as to whether the top surfaces of the pads therein depicted are non-slip, either by means of roughening or, indeed, by any other means. Because there is, therefore, necessarily a question of fact as to whether the limitations of Claim 2 are disclosed in the AstroDeck advertisement, defendants' motion is denied as to Claim 2.

Claim 3 describes the pad of Claim 2, with the additional limitation that the top surface have means of water-channeling; Claim 4 described the pad of Claim 3 with the additional limitation that such water-channeling be accomplished by means of widthwise grooves. Widthwise grooves suitable for water-channeling are plainly evident in the June 1994

---

[3] Indeed, Fletcher's testimony suggests that it is "The kicktail [that] stops your foot from slipping off of the tail." *See* Fletcher Depo., 10:12-13.

advertisement's depiction of AstroDeck's pads. However, because Claims 3 and 4 are each dependent on Claim 2, and because there is a question of fact as to whether the limitations of Claims 2 are disclosed in the AstroDeck advertisement, defendants' motion is denied as to Claims 3 and 4.

Claim 10 describes the pad of Claim 1, with the additional limitation that the pad have a kicktail adjacent to the high front end; Claim 11 describes the pad of Claim 10 with the additional limitation that the kicktail be present along the whole width of the high front end. It is plainly evident in the June 1994 advertisement's depiction of AstroDeck's pads that three of the four pads have kicktails such as those described in Claims 10 and 11. Moreover, Messer conceded under oath that such kicktails were readily identifiable in the depictions. Because the limitations of Claims 10 and 11 are disclosed in and enabled by the AstroDeck advertisement, Claims 10 and 11 are invalid as anticipated by prior art.

Claim 14 describes the pad of Claim 1, with the additional limitation that the top surface incorporate an element providing arch support for the user's foot; Claim 15 describes the pad of Claim 14 with the additional limitation that the arch-support function be accomplished by means of a ridge. It is plainly evident in the June 1994 advertisement's depiction of AstroDeck's pads that three of the four pads have bars or ridges providing arch support as described in Claims 14 and 15. Moreover, Messer conceded under oath that such elements were readily identifiable in the depictions. Because the limitations of Claims 14 and 15 are disclosed in and enabled by the AstroDeck advertisement, Claims 14 and 15 are invalid as anticipated by prior art.

Claim 21 is an independent claim of the '051 patent, describing "a friction-enhancing finish or surface material that may adhere or be attached to the top surface of a wakeboard" and

incorporating the following elements: a "sloping surface" defined between a "high front end" and a "low back end," a "kicktail," and "arch support." As this court concluded in its *Markman* Order, under applicable Federal Circuit jurisprudence "'wakeboard traction surface' must be construed as distinct from a 'wakeboard traction pad.'" Thus, Claim 21 describes the equivalent of "grip tape" or some other friction-enhancing finish or surface material, where such finish or surface material overlies a substrate incorporating a "sloping surface" defined between a "high front end" and a "low back end," a "kicktail," and "arch support." As noted above, the June 1994 advertisement depicts traction *pads* rather than such a traction *surface*. Messer's testimony that he believed the AstroDeck pads would infringe Claim 21 if placed on a wakeboard does not compel this court to conclude that his belief is correct where, as here, his expressed belief is at odds with the observable facts and the plain language of this court's *Markman* Order. Because the limitations of Claim 21 are not disclosed in the alleged prior art, Claim 21 is not invalid as anticipated by the AstroDeck advertisement.

## CONCLUSION

For the reasons set forth above, defendants' motion for partial summary judgment (#45) is granted as to '051 Patent Claims 1, 10, 11, 14, and 15, and denied as to Claims 2, 3, 4, and 21.

Dated this 22nd day of October, 2007.

        /s/ Paul Papak
    Honorable Paul Papak
    United States Magistrate Judge

Page 15 - OPINION AND ORDER